# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DANIEL CHRISTIAN,<br><br>Defendant. | CRIMINAL CASE NO.<br>1:10-CR-0454-RWS-LTW |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and N.D. Ga. CrR. 59(2)(a). Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), within fourteen (14) days after service of this order, each party may file written objections, if any, to the Report and Recommendation. Pursuant to Title 18, United States Code, Section 3161(h) (1) (D), (H), **the above-referenced fourteen (14) days allowed for objections is EXCLUDED from the computation of time under the Speedy Trial Ac, whether or not the objections are actually filed.** If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge. 18 U.S.C. § 3161(h)(1)(D), (H); Henderson v. United States, 476 U.S. 321, 331 (1986); United States v. Mers, 701 F.2d 1321, 1337 (11th Cir. 1983).

Should objections be filed, they shall specify with particularity the alleged error

or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 5th day of January, 2012.

/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DANIEL CHRISTIAN,<br><br>Defendant. | CRIMINAL CASE NO.<br>1:10-CR-0454-RWS-LTW |

## **MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL**

This matter is presently before the Court on Defendant's Motion to Suppress Evidence. Docket Entry [20]. This Court held an evidentiary hearing on Defendant's motion, and the Government filed a response in opposition to Defendant's motion, to which Defendant replied. Docket Entries [39, 46, 49]. Having considered Defendant's motion, the parties' briefs, and all supporting documents submitted, and for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence be **DENIED**. Docket Entry [20].

## BACKGROUND

Defendant has been indicted by the grand jury for conspiring to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); committing a Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and 2; knowingly, using and carrying a firearm in connection with a crime of violence (the Hobbs Act robbery) in violation of 18 U.S.C. § 924(c) and 2; and (d) possession of a firearm by a convicted felon in violation of 18

U.S.C. §§ 922(g)(1), 924(e), and 2. Docket Entry [2].

On October 11, 2010, at twelve o'clock in the afternoon, Atlanta Police Officer Christian Hunt ("Officer Hunt"), was on routine patrol in a marked patrol car in the area of Moreland and Custer Avenue. (Transcript of July 1, 2011 Motion to Suppress Proceedings, hereinafter "Tr.," 7, Docket Entry [39]). Officer Hunt drove his patrol police car into the parking lot of a shopping plaza and within seconds he was flagged down by a black female yelling "a black male with a gun ran out of that business"; while pointing at Outback Insurance. (Tr. 8, 17). Officer Hunt immediately drove in the direction of Outback Insurance and was met by an Asian male yelling, "we just got robbed, he went that way." (Tr. 8). Officer Hunt drove in the direction where the Asian male pointed between Outback Insurance and a CVS pharmacy. (Tr. 8-9).

After looking to the right into a parking lot that empties out onto Custer Avenue, Officer Hunt did not observe any foot traffic or anything else. (Tr. 24, 60). Upon further observation, and after traveling about mid-way through the parking lot, Officer Hunt saw a green Honda Accord in the adjacent driveway that emptied out onto Custer Avenue. (Tr. 9). Despite a field/embankment separating the parking lot and the driveway, Officer Hunt was able to observe the green Honda Accord in the adjacent driveway as he was driving through the parking lot toward Custer Avenue. (Tr. 28, 34). As Officer Hunt was observing the Honda while driving toward Custer Avenue, the vehicle pulled out of the driveway and turned left onto Custer Avenue at a high rate of speed. (Tr. 9). Officer Hunt testified that it was odd that the Honda pulled out of the

2

driveway at a high rate of speed because there were no other cars in the area and speed was unnecessary. (Tr. 9 ).

Officer Hunt pulled out of the parking lot onto Custer Avenue and drove behind the green Honda Accord which was still being driven at a high rate of speed. (Tr. 9). After Officer Hunt approached the Honda, he noticed an illegal, cardboard "drive out" tag affixed to the vehicle that read "Tag Applied For." (Tr. 9, 26, 33, 53-54). Because the unofficial/illegal tag was a violation of law and because the Honda continued traveling at a high rate of speed, Officer Hunt believed that the Honda may have been involved in the robbery and activated his emergency lights and siren . (Tr. 9-10, 26, 61). The driver of the Honda continued westbound on Custer Avenue driving approximately eighty miles an hour into oncoming traffic on the wrong side of the road. (Tr. 10-11). The driver of the Honda also proceeded through two red lights without stopping. (Tr. 10-11).

Officer Hunt noticed there were two occupants in the front seats of the Honda. (Tr. 11). The driver of the Honda, later determined to be the Defendant, tried to make a right turn onto Hamilton Boulevard but because he was going so fast, he wrecked the vehicle. (Tr. 12). Both occupants exited the vehicle and fled on foot. (Tr. 12 ). A foot chase ensued, and Officer Hunt and other officers who arrived on the scene apprehended Defendant and his passenger, co-Defendant Tamarkis Smith ("Smith"). (Tr. 12-13).

After Defendant and Smith were taken into custody, Officer Hunt noticed that the Honda's air bags were deployed, the windshield was cracked, several of the tires were

flattened, and there was damage to the undercarriage of the vehicle. (Tr. 14). Officer Hunt was also able to get a closer look at the vehicle's cardboard tag. (Tr. 14). Officer Hunt observed that the cardboard tag that displayed "Tag Applied For" was wedged over the license plate. (Tr. at 15 ). Upon removing the cardboard tag, Officer Hunt noticed that the Honda had a "normal" Georgia license plate, including a valid tag and decal. (Tr. 15). Although the interior of the vehicle was in disarray, Officer Hunt was able to observe in plain view on the passenger seat, a black handgun, a white, rectangular Wachovia money bag, and a laptop computer. (Tr. 15). The Wachovia money bag and the laptop computer were later identified as items taken during the robbery of Outback Insurance. (Tr. 16). Officer Hunt had also been informed that a firearm was used during the robbery. (Tr. at 17). Prior to the Honda being towed and impounded, Officer Hunt conducted an inventory search of the vehicle pursuant to the Atlanta Police Department's inventory policy and seized the items he observed on the passenger seat. (Tr. 16). No additional evidence was located or seized during the inventory search of the vehicle. (Tr.16).

## DEFENDANT'S MOTION TO SUPPRESS

Defendant argues only that the Government failed to meet its burden of justifying the search of the vehicle Defendant was driving because there were factual inconsistencies in Officer Hunt's account of his observation of the green Honda Accord. The Government in response argues Officer Hunt had probable cause to search Defendant's vehicle following a high speed chase based on reasonable suspicion that

4

Defendant was involved in a crime. In this case, this Court finds that Officer Hunt had probable cause to believe that the driver of the green Honda Accord was driving a vehicle with an illegal cardboard tag and was speeding. This Court also finds that Officer Hunt had at least reasonable suspicion that the occupants of the vehicle had participated in an armed robbery.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision . . . ." Whren v. United States, 517 U.S. 806, 810-11 (1996); accord Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004), cert. denied, 543 U.S. 988 (2004). Probable cause exists when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir. 2006), cert. denied, 127 S. Ct. 2429 (2007). Additionally, law enforcement officials "may draw inferences based on [their] own experience in deciding whether probable cause exists." Ornelas v. United States, 517 U.S. 690, 700 (1996).

In the absence of probable cause, the police may stop a car and briefly detain it and its occupants in order to investigate a reasonable suspicion that such persons are involved in criminal activity. Terry v. Ohio, 392 U.S. 1 (1968); United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009); United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990); see also United States v. Glinton, 347 F. App'x 453 (11th Cir. 2009). The police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" under the totality of the circumstances. United States v. Bautista-Silva, 567 F.3d 1266, 1272 (11th Cir. 2009); Tapia, 912 F.2d at 1370 (citing United States v. Sokolow, 490 U.S. 1 (1989)). The court "may not consider each fact only in isolation and reasonable suspicion may exist even if each fact 'alone is susceptible of innocent explanation.'" Bautista-Silva, 567 F.3d at 1272. "Such facts may be derived from 'various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers.'" United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989). While reasonable suspicion must be more than an inchoate hunch, it is less than proof of wrongdoing by a preponderance of the evidence or a fair probability that evidence of a crime will be found. Id.

In this case, Officer's Hunt's pursuit of the Honda the Defendant was driving was justified because Officer Hunt had both probable cause and reasonable suspicion to believe the driver of the Honda had been involved in criminal activity based on the information provided to him by two witnesses and his own observations. Officer Hunt

provided credible testimony that while on routine patrol and within seconds of pulling into a shopping plaza, he was flagged down by a female witness who yelled that "a black male with a gun ran out of that business"; while pointing at Outback Insurance. (Tr. 8, 17). Officer Hunt immediately went in the direction of Outback Insurance and encountered an Asian male yelling, "we just got robbed, he went that way." (Tr. 8). Officer Hunt drove in the direction where the Asian male pointed between Outback Insurance and a CVS pharmacy. (Tr. 8-9). Officer Hunt observed that there was no foot traffic or anything else in the parking lot. (Tr. 24, 60). After traveling about mid-way through the parking lot, Officer Hunt also observed a green Honda Accord in the adjacent driveway that emptied out onto Custer Avenue. (Tr. 9). Although Defendant attempted to show that it was impossible for Officer Hunt to see the Honda because his view was obstructed, it was clear to the Court that Officer Hunt was able to see the Honda at some point before it sped out of the adjacent driveway onto Custer Avenue. Moreover, Officer Hunt provided credible testimony that the Honda pulled out of the adjacent parking lot a high rate of speed which Officer Hunt thought was odd and unnecessary because there were no other cars in the area. (Tr. 9). After Officer Hunt turned onto Custer Avenue and approached the Honda, he noticed an illegal, cardboard "drive out" tag affixed that read "Tag Applied For." (Tr. 9, 26, 33, 53-54). Because the unofficial/illegal tag was in violation of law, and because the vehicle continued traveling at a high rate of speed, Officer Hunt activated his emergency lights and siren reasonably believing that the occupants of the Honda may have been involved in the armed robbery. (Tr. 9-10, 26, 61).

Furthermore, Defendant's conduct in driving the green Honda Accord at eighty miles an hour, driving into oncoming traffic on the wrong side of the road, through two red lights without stopping, and attempting to evade Officer Hunt provided more than sufficient probable cause to stop and search the vehicle and arrest the driver. (Tr. 10-11). Under these circumstances, Officer Hunt had probable cause to believe that the driver had committed a number of traffic violations. United States v. Rowls, 402 F. App'x 467, 468-69 (11th Cir. 2010) (probable cause to believe driver was speeding existed where patrol officer had paced defendant for one mile and officer's speedometer registered a speed of ten miles above posted speed limit).

Similarly, to the extent Defendant contends Officer Hunt lacked probable cause to search the Honda without a warrant and that his subsequent arrest was illegal, Defendant's arguments are without merit. Defendant's conduct after crashing the Honda and his attempt to flee the scene on foot, provided sufficient probable cause for his arrest and an inventory search was justified under the circumstances. To uphold a search under the inventory search exception, the police must first be authorized to impound the vehicle and then must follow the procedures outlined in their standardized policy. Colorado v. Bertine, 479 U.S. 367, 375 (1987); United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1991). Here, the crash of the vehicle rendered the Honda virtually immobile because the air bags were deployed, the windshield was cracked, several of the tires were flattened, and there was damage to the undercarriage of the vehicle. (Tr. 16-17). Officer Hunt also observed that the illegal cardboard tag that displayed "Tag Applied For" was wedged over a "normal" Georgia license plate. (Tr. 15).

Consequently, pursuant to the Atlanta Police Department's inventory policy, the Honda's contents had to be inventoried before it was towed and impounded. (Tr. 16). Additionally, Officer Hunt's observations of a black handgun, a Wachovia money bag, and a laptop computer in plain view on the passenger seat, provided probable cause for Defendant's arrest. Accordingly, Defendant's Motion to Suppress should be **DENIED**.

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress Evidence be **DENIED**. Docket Entry [20]. There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial. Therefore, this action is hereby **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this 5th day of January, 2012.

/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE